216 P.3d 1243

**In the Matter of the Tax Appeal of SPIRENT HOLDING CORP. & Subsidiaries, Taxpayer Appellant–Appellee,**

v.

**STATE of Hawai'i, DEPARTMENT OF TAXATION, Appellee–Appellant.**

**No. 29199.**

Intermediate Court of Appeals of Hawai'i.

July 14, 2009.

Hugh R. Jones and Damien A. Elefante, Deputy Attorneys General, State of Hawai'i, on the briefs, for Appellee–Appellant.

Ronald I. Heller (Torkildson Katz Moore Hetherington & Harris), Honolulu, on the briefs, for Taxpayer Appellant–Appellee.

WATANABE, Acting C.J., FUJISE, and LEONARD, JJ.

1. The Honorable Gary W.B. Chang presided.

Opinion of the Court by WATANABE, Acting C.J.

In this appeal, the Director of Taxation, State of Hawai'i (Director or State) challenges the final judgment entered by the Tax Appeal Court of the State of Hawai'i (tax appeal court)[1] on July 14, 2008 (final judgment) and two orders entered by the tax appeal court on March 7, 2008 (collectively, summary judgment orders), the first of which denied the Director's December 11, 2007 motion for summary judgment and the second of which granted the October 24, 2007 motion for summary judgment filed by Taxpayer Appellant–Appellee Spirent Holding Corp. & Subsidiaries (Spirent or taxpayer).

The sole issue presented is whether, for the 2001 taxable year, Spirent timely filed its amended claim for a research-activities corporate-income-tax credit (research-activities tax credit) pursuant to Hawaii Revised Statutes (HRS) § 235–110.91 (2001) (amended claim).

We conclude that Spirent's amended claim was not timely filed, and, accordingly, we reverse the final judgment and the summary judgment orders entered by the tax appeal court.

## FACTUAL BACKGROUND

Pursuant to a stipulation of facts and order filed on October 22, 2007, the Director and Spirent stipulated and agreed that particular facts were "conclusively established" for purposes of this action. Of relevance to this appeal are the following stipulated facts:

1. Spirent's present tax appeal, Case No. 06–0100, involves its State of Hawaii corporate net income taxes and tax returns for tax year 2001. More specifically, this case relates to Spirent's tax year 2001 claim for the research activities tax credit, pursuant to [HRS] § 235–110.91 (2001).

2. [HRS] § 235–110.91 (2001) provides a research activities tax credit for certain qualified research expenses ("QREs")....

3. Spirent became a Hawaii tax filer in 1997 when it acquired Adtech, a Hawaii-based company that invented and manufactured state-of-the-art testing equipment.

4. For tax year 2000 (and in prior years), the Hawaii research activities tax credit was based on the federal Credit for Increasing Research Activities ("Federal R & D Credit") under [Internal Revenue Code (IRC)] § 41. The Federal R & D credit is calculated on the *increase* in QREs over a "base amount".

5. Effective for tax years beginning in 2001, Act 221, 2000 Haw. Sess. Laws, changed the method for calculating the Hawaii research activities tax credit to one different from the Federal R & D Credit. Act 221, Section 10(1) changed the Hawaii research activities tax credit to one based on the total gross amount of QREs, as opposed to the *increase* in QREs over a "base amount".

6. Thus, for tax years prior to 2001, the federal credit and the Hawaii credit were both based on the increase in QREs over a "base amount"; beginning with tax year 2001, the federal credit and the Hawaii credit were different in that, the federal credit was still based on the *increase* in QREs, but the Hawaii credit was based on the *total amount* of the QREs in the State of Hawaii.

7. In calculating and claiming the Hawaii research activities tax credit, Form 318 was used prior to 2001 which based the calculation on the amounts reported as Federal R & D credit (increase in QREs over a base amount). Beginning in 2001, Form 319, a new form, was used to calculate and claim the Hawaii research activities tax credit which was based on the calculation of the total gross amount of QREs. Both Form 318 and Form 319 require the use of information reported in Federal Form 6765 for the Federal R & D credit to compute the total Hawaii credit allowed.

8. On or about April 4, 2002, Spirent requested an automatic six (6) month extension of time (Form N–301) to file its 2001 State of Hawaii corporate net income tax returns (Form N–30).

9. The Director granted Spirent [sic] request for a six (6) month extension to October 2001[sic] to file its 2001 State of Hawaii net income tax returns (Form N–30).

. . . .

11. On or about October 21, 2002, Spirent timely filed an original 2001 State of Hawaii corporate net income tax return (Form N–30).

12. Spirent's corporate tax department gathered and reviewed relevant information and then manually and using Fast Tax, a tax software package, prepared Spirent's original 2001 State of Hawaii corporate net income tax return.

13. Spirent's Tax Manager reviewed and approved the original State of Hawaii corporate income tax return as filed.

14. Spirent's Tax Director reviewed and approved the original 2001 State of Hawaii corporate income tax return as filed.

15. At the time of the review and approval of Spirent's Tax Manager and Tax Director, the amounts reported in Spirent's original 2001 State of Hawaii corporate income tax return were believed to be true, correct, and complete.

16. At the time it was signed, the language immediately above the signature line of Spirent's original 2001 State of Hawaii corporate income tax return said:

> I declare, under the penalties set forth in section 231–36, HRS, that this return (including any accompanying schedules or statements) has been examined by me and to the best of my knowledge and belief is true, correct and complete.

. . . .

18. Line 1, the "Total Current Year Credit" of Form N–319, requires a taxpayer to calculate and enter an amount based

on the information it provided on federal Form 6765.

19. On Line 1 of Form N–319 included in Spirent's original 2001 Hawaii corporate income tax return, Spirent entered the amount of the "Total Current Year Credit" from federal Form 6765 in the amount of $3,731,573 for the 2001 tax year.

20. On Line 2 of Form N–319 included in its original 2001 Hawaii corporate income tax return, Spirent reported QREs for activities conducted within Hawaii in the total amount of $10,810,080 for the 2001 tax year.

21. On Line 3 of Form N–319 included in Spirent's original 2001 Hawaii corporate income tax return Spirent reported total QREs for all activities in the amount of $57,408,818.

22. Form N–319, included within Spirent's State of Hawaii 2001 original corporate net income tax return, reported $702,655 as the calculated amount of the research activities tax credit for 2001.

23. The calculated amount of $702,655 reported on Spirent's State of Hawaii 2001 original corporate net income tax return was incorrect.

24. Instead of following the instructions as outlined in Form N–319 to calculate the amount for Line 1, Spirent merely reported the increase in QREs as reported in Federal Form 6765 for 2001 on Line 1.

25. Based on the $10,810,000 of Hawaii QREs reported on Form N–319, Spirent was entitled to claim a research activities tax credit of $1,405,310. However, because of the error in inputting the amount in Line 1 of Form N–319, the amount calculated for the total credits allowed on the original return was less than the amount that Spirent was entitled to claim.

26. From the face of Form N–319 submitted with Spirent's original 2001 return, and given an understanding of how the Hawaii research activities tax credit worked as of 2001, it could be determined that a mistake had been made.

27. Spirent's original State of Hawaii corporate net income tax liability for 2001 as reported on its filed original 2001 corporate net income tax return was $4,609.00.

28. In late September or early October of 2003, during the preparation of Spirent's 2002 returns, Spirent's Tax Manager discovered that the amount claimed for the research activities tax credit in Spirent's 2001 original State of Hawaii corporate net income tax return was incorrect. Specifically, Line 1 of Form N–319 had been filled in with the actual amount of the federal credit from the Federal R & D Credit form, which was based on the increase in QREs over the base amount, instead of the recomputed number that ignored the base amount.

29. On or about October 20, 2003, Spirent filed an amended State of Hawaii corporate income tax return for 2001. That amended return did *not* change the originally stated amount of Hawaii QREs on line 2 of the Form N–319, on which the research activities tax credit was based. However, the amended return did change the original amount stated on line 1 of Form N–319, "Recompute the amount your total current year credit from federal Form 6765" from $3,731,573 to $7,463,146.00.

30. Spirent's amended 2001 corporate net income tax return reported $1,405,310.00 as the amount of the research activities tax credit allowed for 2001. This was greater than the amount reported on the original return.

. . . .

32. The Internal Revenue Service later audited Spirent's Federal R & D Credit claim for 2001. None of the claimed Hawaii QREs were disallowed.

33. For tax year 2001, the Department allowed Spirent's original claim for the Hawaii research tax credit in the amount of $702,655.00 and disallowed Spirent's additional claim of $702,655.00 because Spirents' amended return claiming the additional amount was not filed by the end of

the twelfth month after the close of the 2001 tax year.

34. If Spirent had stated the correct amount in Line 1 ($7,463,146.00) on Form N–319 submitted with its original 2001 corporate net income tax return, Spirent would have calculated the Hawaii research tax credit in the amount of $1,405,310.00.

35. The Department would have allowed the amount of the credit if Spirent had correctly calculated and claimed the Hawaii research tax credit in the amount of $1,405,310.00 on the Form N–319 before the end of the twelfth month after the close of the 2001 tax year.

36. Hawaii Revised Statutes § 235–110.9 (2001) provides a high technology tax credit for certain qualified high technology business activities. The high technology tax credit in § 235–110.9 was enacted at the same time as, and in the same legislative enactment as, the research activities tax credit in § 235–110.91 . . . .

(Emphases in original.)

## PROCEDURAL HISTORY

On December 31, 2001, Spirent filed a notice of appeal from the Director's denial of Spirent's amended claim to the Board of Taxation Review for the First Taxation District of the State of Hawai'i. On September 29, 2006, the Board of Taxation Review rendered its decision in favor of the Director in the amount of $702,655.00.

On October 25, 2006, Spirent filed a notice of appeal from the Board of Taxation Review's decision to the tax appeal court. Spirent argued that it had complied with the statute of limitations set forth in HRS § 235–110.91 because it had filed its claim for the research-activities tax credit before the end of the twelfth month following the close of the taxable year and there was no statute that barred a taxpayer from adjusting a timely filed claim for the research-activities tax credit after the twelve-month period following the close of the taxable year.

On October 24, 2007, Spirent filed its motion for summary judgment. Spirent assert-

ed that it was entitled to judgment as a matter of law because the relevant facts were undisputed and the only issue was whether Spirent's amended claim was timely.

On December 11, 2007, the Director filed his motion for summary judgment. The Director asserted that based on the undisputed facts, "the Director's disallowance of [Spirent's] claim for an additional $702,655.00 in Hawaii tax credits for research activities for tax year 2001 was proper because [Spirent] failed to file timely and to claim the amount within the twelve-month period pursuant to [HRS] § 235–110.91 . . . . In other words, [Spirent's] 2001 additional claim for research activities was statutorily time barred."

On March 7, 2008, the tax appeal court filed the summary judgment orders that denied the Director's motion and granted Spirent's motion. The tax appeal court ruled that "Spirent is entitled to its amended claim for the [r]esearch [a]ctivities [t]ax [c]redit requesting an additional amount of $702,655.00 for tax year 2001. The additional $702,655.00 shall be allowed and refunded to Spirent, together with applicable interest as provided by law."

On March 14, 2008, the Director filed its motion for reconsideration of the summary judgment orders (motion for reconsideration). The State asserted that "the basis of the Court's decision may invalidate and disrupt the implementation of [HRS] § 235–110.91(f)." On March 24, 2008, Spirent filed its memorandum in opposition to the Director's motion for reconsideration.

On June 6, 2008, the State filed its notice of appeal from the summary judgment orders.

On July 14, 2008, the tax appeal court entered its order denying the Director's motion for reconsideration. The tax appeal court also entered a final judgment in favor of Spirent and against the Director, which declared that "Spirent is entitled to an additional amount of $702,655.00 as and for the [r]esearch [a]ctivities [t]ax [c]redit for tax year 2001. The additional $702,655.00 shall

be refunded to Spirent, together with applicable interest as provided by law."

## STANDARDS OF REVIEW

"We review the circuit court's grant or denial of summary judgment de novo." *Querubin v. Thronas,* 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005) (quoting *Durette v. Aloha Plastic Recycling, Inc.,* 105 Hawai'i 490, 501, 100 P.3d 60, 71 (2004)).

Similarly, "[t]he interpretation of a statute is a question of law, which is reviewed on appeal de novo." *State v. Klie,* 116 Hawai'i 519, 522, 174 P.3d 358, 361 (2007) (quoting *State v. Wells,* 78 Hawai'i 373, 376, 894 P.2d 70, 73 (1995)).

## DISCUSSION

### A.

HRS § 235–111 (2001) establishes the general limitation period for filing taxpayer claims for tax credits and refunds:

**Limitation period for assessment, levy, collection, or credit; net operating loss carrybacks** . . . .

. . . .

(b) Limitation on credit or refund. Claim for credit or refund of an overpayment of any tax imposed by this chapter *shall be filed by the taxpayer or employer within three years from the time the return was filed* or from the due date prescribed for the filing of the return, or within two years from the time the tax was paid, whichever is later.

(Emphasis added.)

Pursuant to HRS § 235–110.91, a more specific limitation period is imposed for claiming a research-activities tax credit. At the time that Spirent filed its original and amended claims for this tax credit for the 2001 taxable year, HRS § 235–110.91(f) [2] provided:

2. Pursuant to an amendment to HRS § 235–110.91 enacted in 2004, paragraph (f) was renumbered to paragraph (h). *See* HRS § 235–

**Tax credit for research activities.** . . .

. . . .

(f) All claims for a tax credit under this section shall be filed on or before the end of the twelfth month following the close of the taxable year for which the credit may be claimed. Failure to properly claim the credit shall constitute a waiver of the right to claim the credit.

HRS chapter 235 includes other statutory sections allowing tax credits which impose limitation periods for claiming the credits that are similar to HRS § 235–110.91(f) but which vary slightly from HRS § 235–110.91 in that they include the phrase "including amended claims" after the term "claims" or "all claims." For example, HRS § 235–15 (2001), which allows tax credits "to promote the purchase of child passenger restraint systems," provides in subsection (f) as follows:

**Tax credits to promote the purchase of child passenger restraint systems.** . . .

. . . .

(f) Claims for the tax credit under this section, *including any amended claims,* shall be filed on or before the end of the twelfth month following the taxable year for which the credit may be claimed.

(Emphasis added.) Similarly, HRS § 235–16 (2001), which was repealed in 2003, entitled "County surcharge excise tax credit[,]" provides:

**County surcharge excise tax credit.** . . .

. . . .

All claims for tax credits under this section, *including any amended claims,* must be filed on or before the end of the twelfth month following the close of the taxable year for which the credits may be claimed. Failure to comply with the foregoing provision shall constitute a waiver of the right to claim the credit.

(Emphasis added.) *See also* HRS § 235–

110.91(h) (Supp.2008) and 2004 Haw. Sess. Laws Act 215, § 9 at 971.

17(d) (2001)[3] (motion-picture-and-film-production income-tax credit); HRS § 235–55.7 (2001)[4] (income-tax credit for low-income household renters); HRS § 235–55.85 (2001)[5] (low-income refundable tax credit); HRS § 235–55.91 (2001)[6] (tax credit for employment of vocational rehabilitation referrals); HRS § 235–110.2 (2001)[7] (credit for school repair and maintenance); HRS § 235–110.4 (2001)[8] (hotel-construction-and-remodeling tax credit); HRS § 235–110.45 (2001)[9] (residential-construction-and-remodeling tax credit); HRS § 235–110.6 (2001)[10] (fuel tax credit for commercial fishers); HRS § 235–

3. HRS § 235–17(d) provides, in part:

> **Motion picture and film production; income tax credit.** . . .
> . . . .
> (d) . . . .All claims, *including any amended claims*, for tax credits under this section shall be filed on or before the end of the twelfth month following the close of the taxable year for which the credit may be claimed. Failure to comply with the foregoing provision shall constitute a waiver of the right to claim the credit.
> (Emphasis added.)

4. HRS § 235–55.7 provides, in relevant part:

> **Income tax credit for low-income household renters.** . . .
> . . . .
> (h) Claims for tax credits under this section, *including any amended claims thereof*, shall be filed on or before the end of the twelfth month following the taxable year for which the credit may be claimed.
> (Emphasis added.)

5. HRS § 235–55.85 provides, in pertinent part:

> **Low-income refundable tax credit.** . . .
> . . . .
> (f) All claims for tax credits under this section, *including any amended claims*, shall be filed on or before the end of the twelfth month following the close of the taxable year for which the credits may be claimed. Failure to comply with the foregoing provision shall constitute a waiver of the right to claim the credit.
> (Emphasis added.)

6. HRS § 235–55.91(i) provides as follows:

> **Credit for employment of vocational rehabilitation referrals.** . . .
> . . . .
> (i) All claims for tax credits under this section, *including any amended claims*, shall be filed on or before the end of the twelfth month following the close of the taxable year for which the credits may be claimed. Failure to comply with the foregoing provision shall constitute a waiver of the right to claim the credit.
> (Emphasis added.)

7. HRS § 235–110.2 provides, in pertinent part:

> **Credit for school repair and maintenance.** . . .

> . . . .
> (e) All claims for tax credits under this section, *including any amended claims*, shall be filed on or before the end of the twelfth month following the close of the taxable year for which the credits may be claimed. Failure to comply with the foregoing provision shall constitute a waiver of the right to claim the credit.
> (Emphasis added.)

8. At the time Spirent filed its 2001 tax return, HRS § 235–110.4 provided, in relevant part:

> **Hotel construction and remodeling tax credit.** . . .
> . . . .
> (c) . . . .All claims for a tax credit under this section, *including amended claims*, shall be filed on or before the end of the twelfth month following the close of the taxable year for which the credit may be claimed. Failure to comply with the foregoing provision shall constitute a waiver of the right to claim the credit.
> (Emphasis added.) HRS § 235–110.4 was repealed in 2007. 2007 Haw. Sess. Laws Act 9, § 23 at 24.

9. HRS § 235–110.45, which was repealed in 2007, 2007 Haw. Sess. Laws Act 9, § 24 at 24, provided, in part:

> **Residential construction and remodeling tax credit.** . . .
> . . . .
> (c) . . . .All claims, *including amended claims*, for a tax credit under this section shall be filed on or before the end of the twelfth month following the close of the taxable year for which the credit may be claimed. Failure to comply with the foregoing provision shall constitute a waiver of the right to claim the credit.
> (Emphasis added.)

10. HRS § 235–110.6 provides, in relevant part, as follows:

> **Fuel tax credit for commercial fishers.** . . .
> . . . .
> (f) Claims for the tax credit under this section, *including any amended claims thereof*, shall be filed on or before the end of the twelfth month following the taxable year for which the credit may be claimed.
> (Emphasis added.)

110.7 (Supp.2008) [11] (capital-goods excise-tax credit); HRS § 235–110.9 (2001) [12] (high-technology-business-investment tax credit); and HRS § 235–110.92 (2001) [13] (drought-mitigating water-storage-facility income-tax credit).

In this case, Spirent clearly filed its original claim for the research-activities tax credit within twelve months after the close of the 2001 taxable year. However, Spirent did not file its amended claim for the tax credit until twenty-two months after the close of the 2001 taxable year.

In reversing the Board of Taxation Review's decision that Spirent's amended claim was untimely, the tax appeal court orally explained as follows:

[I]n short, the Court agrees with the taxpayer. I think in other cases in addition to this case, but other unrelated cases, this Court's review of statutes and our Legislature's precision in enacting tax statutes, this Court has been generally impressed with the Legislature's sophistication in tax matters. And the argument that the taxpayer makes that when the Legislature wants to include amended claims, it does so specifically, and one example is 235–110.9(c), this Court agrees with that analysis. And since the language "including amended claims" was not a part of 235–110.91(f), which I think the Court referred to as Subsection [ (h) ], but I guess for this case it was [ (f) ], I think that this Court is persuaded that the Legislature made a conscious choice to require that initial claims for the tax credit involved be made within the 12–month period, and the Legislature's silence in Section 110.91(f) with respect to amended claims I think signals the Legislature's deferral or deference to the general proposition allowing up to three years to submit amended claims for tax credits. And we have also the rule of construction that the specific provision would govern an issue rather than a general provision, and the Section 235–11(b), I believe it is, that is the three-year limitation on amended claims for tax credits, is not altered by 235–110.91(f) because Subsection 110.91(f) is silent on the question of amended claims, so there is no specific provision in Subsection 110.91(f) relating to filing of amended claims. Therefore, the general rule contained in Subsection 111 would govern the matter of filing amended claims with respect to the research tax credit.

Therefore, for these and any other good cause shown in the record, the Court will respectfully grant the taxpayer's motion for summary judgment and deny the director's motion for summary judgment.

For the reasons that follow, we hold that the tax appeal court erred in concluding that Spirent's amended claim was timely.

11. HRS § 235–110.7 provides, in relevant part:
    **Capital goods excise tax credit.** . . .
    . . . .
    All claims for tax credits under this section, *including any amended claims*, must be filed on or before the end of the twelfth month following the close of the taxable year for which the credits may be claimed. Failure to comply with the foregoing provision shall constitute a waiver of the right to claim the credit. (Emphasis added.)

12. HRS § 235–110.9 provides, in pertinent part, as follows:
    **High technology business investment tax credit.** . . .
    . . . .
    (c) . . . . Every claim, *including amended claims*, for a tax credit under this section shall be filed on or before the end of the twelfth month following the close of the taxable year for which the credit may be claimed. Failure

to comply with the foregoing provision shall constitute a waiver of the right to claim the credit. (Emphasis added.)

13. HRS § 235–110.92, which was repealed in 2007, 2007 Haw. Sess. Laws Act 9, § 25 at 24, formerly provided, in part:
    **Drought mitigating water storage facility; income tax credit.** . . .
    . . . .
    (c) . . . . All claims, *including any amended claims*, for a tax credit under this section shall be filed on or before the end of the twelfth month following the close of the taxable years for which the credit may be claimed. Failure to comply with the foregoing provision shall constitute a waiver of the right to claim the credit. (Emphasis added.)

## B.

The Hawai'i Supreme Court has established the following principles for interpreting a statute:

First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

*Awakuni v. Awana,* 115 Hawai'i 126, 133, 165 P.3d 1027, 1034 (2007). The supreme court has also instructed that statutory language must be read in the context of the entire statute and construed in a manner consistent with its purpose. *Hous. Fin. & Dev. Corp. v. Castle,* 79 Hawai'i 64, 76–77, 898 P.2d 576, 588–89 (1995). Additionally, "it is a cardinal rule of statutory construction that a statute ought upon the whole be so constructed that, if it can be prevented, no clause, sentence or word shall be superfluous, void, or insignificant." *Lopez v. Bd. of Trs., Employees' Ret. Sys.,* 66 Haw. 127, 129, 657 P.2d 1040, 1042 (1983) (internal quotation marks and brackets omitted).

Subsection (f) of HRS § 235–110.91 clearly and unambiguously provides that *"[a]ll* claims for a tax credit under this section shall be filed on or before the end of the twelfth month following the close of the taxable year for which the credit may be claimed." (Emphasis added.) Pursuant to HRS § 1–14 (1993), "[t]he words of a law are generally to be understood in their most known and usual signification, without attending so much to the literal and strictly grammatical construction of the words as to their general or popular use or meaning." Merriam–Webster's Collegiate Dictionary defines the adjective "all" as:

**1 a** : the whole amount or quantity of ... **2** : every member or individual component of ... **3** : the whole number or sum of ... **4** : EVERY ...

*Merriam–Webster's Collegiate Dictionary* 29 (10th ed.2000). "The word 'all' usually does not admit of an exception, addition, or exclusion." 73 Am.Jur.2d *Statutes* § 159 at 358 (2001). As generally understood, therefore, the term "all claims" as used in HRS § 235–110.91(f) includes every claim for a research-activities tax credit, or the whole amount or sum or number of research-activities tax credits claimed, including amended claims. The tax appeal court's construction of HRS § 235–110.91(f) as applying to initial, but not amended, claims for the tax credit does not comport with the plain and unambiguous language of the statute as applying to "all claims." *In accord Consol. Freightways Corp. of Del. v. Nicholas,* 258 Iowa 115, 137 N.W.2d 900, 904 (1965) (holding that "[t]he word 'all' is commonly understood and usually does not admit of an exception, addition or exclusion"); *Cmty. Telecomms. Corp. v. State Tax Assessor,* 684 A.2d 424, 426 (Maine 1996) (holding that " '[a]ll' means the 'total entirety or extent of' the noun that it modifies. When used in statutes the term 'all' is a wide-ranging word that 'does not admit of exception, addition or exclusion' ") (citations omitted).

## C.

The tax appeal court held that since other tax-credit statutes in HRS chapter 235 specifically provided that the limitation period for claiming a credit thereunder applies to all claims, "including amended claims," the exclusion of the term "including amended claims" from HRS § 235–110.91(f) signified a legislative intent to exclude amended claims

from the limitation period specified in subsection (f).

In *Schwab v. Ariyoshi*, 58 Haw. 25, 35, 564 P.2d 135, 141 (1977), however, the Hawai'i Supreme Court held that "[t]he term 'includes' is ordinarily a term of enlargement, not of limitation; a statutory definition of a thing as 'including' certain things does not necessarily impose a meaning limited to the inclusion." The Hawai'i Supreme Court has also stated that "[t]he term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle." *In re Waikoloa Sanitary Sewer Co.*, 109 Hawai'i 263, 274, 125 P.3d 484, 495 (2005). In *Lealaimatafao v. Woodward–Clyde Consultants*, 75 Haw. 544, 556, 867 P.2d 220, 226 (1994), the supreme court quoted from *Black's Law Dictionary* to explain that

> [t]he term, "including" expresses "an enlargement and [has] the meaning of *and* or *in addition to*, or merely specifies a particular thing already included within the general words theretofore used." BLACK'S LAW DICTIONARY 763 (6th ed.1990) (emphasis in original).... The term "including" in no way implies exclusivity.

A treatise on statutory construction has observed, consistent with the supreme court, as follows:

> It has been said "[t]he word 'includes' is usually a term of enlargement, and not of limitation.... It, therefore, conveys the conclusion that there are other items includable, though not specifically enumerated...."

Norman J. Singer, 2A *Statutes and Statutory Construction* § 46:04, 231–32 (2000 rev.).

In this case, the limitation period set forth in HRS § 235–110.9 plainly applies to "all claims" for a tax credit thereunder. Since an "amended claim" is a subset of "all claims," the limitation period set forth in HRS § 235–110.9(f) clearly and unambiguously applied to Spirent's amended claim, notwithstanding the legislature's failure to specifically provide that the term "all claims" "includes amended claims."

**D.**

It is a well-established tenet of statutory construction that "where there is a plainly irreconcilable conflict between a general and a specific statute concerning the same subject matter, the specific will be favored. However, where the statutes simply overlap in their application, effect will be given to both if possible, as repeal by implication is disfavored." *Richardson v. City & County of Honolulu*, 76 Hawai'i 46, 55, 868 P.2d 1193, 1202 (1994) (internal quotation marks omitted).

The circuit court applied the general limitation period contained in HRS § 235–111(b), rather than the more specific limitation period contained in HRS § 235–110.91(f) to Spirent's amended claim. Inasmuch as HRS § 235–110.91(f) clearly and unambiguously applied to *all* claims for a research-activities tax credit, the more specific limitation period for claiming a tax credit under HRS § 235–110.91 and not the general limitation period set forth in HRS § 235–111 was applicable.

## CONCLUSION

The tax appeal court erred in holding that Spirent filed a timely amended claim for a research-activities tax credit for the 2001 taxable year. Accordingly, we reverse the summary judgment orders and the final judgment entered by the tax appeal court.